UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESUS QUINTERO, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | | CIVIL ACTION NO. |
| § | | |
| VIRGINIA ANN BAGGIO, § | | SA-10-CV-0932 OG (NN) |
| SCOT ANDERSON, § | | |
| CITY OF WEIMAR, TEXAS, § | | |
| WAYNE BUEM, § | | |
| REBECCA BAGGIO, § | | |
| KATRINA D. PACKARD, § | | |
| § | | |
| Defendants. § | | |

REPORT AND RECOMMENDATION

TO:   Honorable Orlando Garcia
      United States District Judge

This report and recommendation addresses the pending motions to dismiss. I have jurisdiction to issue this report and recommendation under 28 U.S.C. 636(b) and the district judge's order of referral.[1] The district court has jurisdiction over this case because it involves a question of federal law. For the reasons discussed below, I recommend dismissing this case.

**This case arose from a domestic dispute between a father and a mother over visitation of a child**. The parties are identified below:

1. Plaintiff Jesus Quintero: former husband of Virginia Ann Baggio and father of Nina Raquel Baggio (Nina);

2. Defendant Virginia Ann Baggio (Virginia): Quintero's former wife and Nina's mother;

---

[1] Docket entry # 16.

    3.        Defendant Rebecca Baggio (Rebecca): Virginia's mother and Quintero's former mother-in-law;

    4.        Defendant Katrina Packard: Virginia's divorce attorney;

    5.        Defendant Scot Anderson: Virginia's boyfriend;

    6.        Defendant City of Weimar: the city where Virginia and Scot reside; and

    7.        Defendant Wayne Buem: City of Weimar police officer.

Quintero and Virginia were divorced on April 20, 2010.[2] The final decree of divorce gave Virginia the right to determine Nina's primary residence and permitted Quintero to visit Nina in a supervised setting. Prior to the divorce, Quintero asserted that a court order dated December 5, 2001 permitted him to see Nina. Quintero alleged that the defendants conspired to prevent him from visiting Nina. He complained that Buem issued him a trespass warning when he appeared unannounced at Virginia's home to visit Nina.

**Quintero styled his case as a civil rights lawsuit, asserting a violation of his right to equal protection under the Fourteenth Amendment and alleging a conspiracy between the defendants to prevent him from visiting Nina.** Defendants Packard, Virginia, City of Weimar and Buem moved to dismiss the claims against them. A defendant in a civil action may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted."[3]

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in

---

[2] *See* docket entry # 6, exh. A (final decree of divorce).

[3] Fed. R. Civ. P. 12(b)(6).

fact)."[4]

Because Quintero failed to allege sufficient facts as to all defendants, all claims should be dismissed for failing to state a claim upon which relief may be granted.  To the extent Quintero may complain about a lack of notice that the court will consider dismissing claims that are not the subject of a motion to dismiss, Quintero should consider this report as notice and respond according to the instructions for objecting.

**Quintero failed to state a claim against Virginia, Rebecca, Anderson, and Packard because those individuals are not state actors**.  Quintero identified 42 U.S.C. § 1983 as a basis for his lawsuit.  To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[5]  Section 1983 does not provide for a cause of action against a private individual unless the person acted under color of state law.  Quintero did not allege that Virginia, Rebecca, Anderson, and Packard acted under color of state law.  Quintero complained that Virginia — as Nina's mother — hid Nina from him.  Quintero complained that Rebecca — as Virginia's mother and Quintero's mother-in-law — plotted with Virginia to prevent Quintero from locating Nina.  Quintero complained that Anderson — as Virginia's boyfriend — lied to the mailman that Virginia had moved.[6]  Quintero complained that Packard — as Virginia's divorce attorney — did not believe him when he tried

---

[4]*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

[5]*West v. Atkins*, 487 U.S. 42, 48 (1988).

[6]Docket entry # 1, p. 10.

to convince her Virginia hid Nina from him. The only allegation remotely suggesting color of state law is Quintero's allegation that Virginia pretended to fear him so that Buem would ask him to leave Virginia's home.[7] That allegation does not implicate state action.[8] The claims against Virginia, Rebecca, Anderson, and Packard should be dismissed for failing to state a claim.

**Quintero's allegations do not overcome Buem's qualified immunity defense**. "The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit. 'Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'"[9] In resolving a government official's qualified immunity defense, the court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and if so, whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.[10] The district court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[11]

As to the first prong of the analysis, Quintero's allegations do not make out a violation of a constitutional right. Quintero complained under section 1983 about a violation of his

---

[7]Docket entry # 1, pp. 5 & 13.

[8]*Boykin v. Bloomsburg Univ. of Penn.*, 893 F. Supp. 409, 417 (M.D. Pa. 1995) ("Providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983.").

[9]*Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (internal citation omitted).

[10]*See Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009).

[11]*Pearson,* 129 S. Ct. at 818.

Fourteenth Amendment right to equal protection under the law.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[12]  Quintero complained about equal protection of the law, but he did not allege that he was treated differently than similarly treated persons.

Instead of alleging he was treated differently, Quintero complained that Buem prohibited him from knocking on Virginia's door on December 17, 2009.  Quintero stated that Virginia called the Weimar police after she saw Quintero drive by her home and told the police that she feared Quintero.  Quintero alleged that Buem issued him a trespass warning and complained that Buem did not believe him when he told Buem that he had the right to visit Nina.  These factual allegations do not make out a violation of the Fourteenth Amendment's guarantee of equal protection of the laws because the allegations do not allege that Quintero was treated differently than similarly situated persons.  Because Quintero's allegations do not state a claim of violation of the Fourteenth Amendment, Buem is entitled to his defense of qualified immunity.  The claims against Buem should be dismissed.

**Quintero's remaining claims fail to state a claim**.  To the extent that Quintero complained under 42 U.S.C. § 1985 about a conspiracy to deprive him of his right to see his child, that provision applies to "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[13]  Quintero did not complain about a conspiracy based on racial or otherwise class-based, invidiously discriminatory animus.  Thus,

---

[12]*City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

[13]*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Quintero failed to state a claim under section 1985. To the extent Quintero complained under 42 U.S.C. § 1986, a claim under that provision requires the plaintiff to show a violation of section 1985.[14] Because Quintero has failed to state a claim under section 1985, Quintero failed to state a claim under section 1986. To the extent that Quintero complained under 42 U.S.C. § 1981, that provision applies to claims of race discrimination.[15] Quintero characterized himself as a "simple mexican" and described Buem as a [wh[i]te cop,] but he did not allege that his race played any role in the complained-about conduct. Instead, he alleged that Buem discriminated against him because of his gender and his exaggerated limp.[16] To the extent Quintero sued City of Weimar, Quintero alleged only that the city had a duty through Buem to enforce his right under section 25.03 of the Texas Penal Code to visit his child. That allegation does not state a claim because section 25.03 confers no federal or constitutional right. The claims under sections 1981, 1985 and 1986, and the claims against the City of Weimar, should be dismissed.

**Quintero should be warned about filing pleadings lacking an arguable basis in law and fact**. Rule 11 requires a party to certify that his claims are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.[17] The allegations in Quintero's complaint show that Quintero should know his claims

---

[14]*See Bradt v. Smith*, 634 F.2d 796, 801 -802 (5th Cir. 1981) (stating that to make out a claim under section 1986 requires the existence of a valid claim under section 1985).

[15]*See Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 607 (1987) ("Section 1981, 'at a minimum,' reaches 'discrimination directed against an individual because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens.'").

[16]Docket entry # 1, p. 16.

[17]Fed. R. Civ. P. 11(b)(2).

are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.  Quintero's complaint details his efforts to enforce court orders providing for supervised visitation of his daughter.  The Texas Family Code provides for the enforcement of visitation rights.[18]  The Code permits a person seeking to enforce his visitation right to file a motion to enforce in the court that entered the order providing for visitation.[19]  Quintero knows about that remedy because he stated in his complaint that he studied family law for twelve years,[20] and the Weimar city attorney told him that his solution was to file a motion for enforcement.[21]  Rather than ask for enforcement from a Texas court, Quintero filed this case, a case lacking an arguable basis in law or fact.

**Recommendation**.  I recommend granting the pending motions to dismiss (docket entry #s 6, 9 & 18) and DISMISSING this case in its entirety.  I also recommend warning Quintero under Rule 11 about the consequences of filing a future case lacking an arguable basis in law and fact.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the

---

[18]*See* Tex. Fam. Code Ann.  § 157.001(a) ("A motion for enforcement . . . may be filed to enforce a final order for conservatorship, child support, possession of or access to a child, or other provisions of a final order.").

[19]*See* Tex. Fam. Code Ann. § 157.001(d) ("A motion for enforcement shall be filed in the court of continuing, exclusive jurisdiction.").

[20]Docket entry # 1, p. 18.

[21]Docket entry # 1, p. 5.

clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[22] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[23] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[24]

**SIGNED** on March 1, 2011.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[22] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[23] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[24] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).